UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DAVID GARCIA,                                                            Civil No. 03-6537 (JRT/JSM)

         Plaintiff,

   v.
                                                                             <u>REPORT AND</u>
LYNN DINGLE, <u>et</u> <u>al.</u>,                                         <u>RECOMMENDATION</u>

         Defendants.

      The above matter is before the undersigned United States Magistrate Judge on defendants' Motion Summary Judgment [Docket No. 28] and plaintiff's Motion for Partial Dismissal of Claims/Suit [Docket No. 42].

      This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).  For the reasons discussed below, it is recommended that:

      1.       Defendants' Motion Summary Judgment [Docket No. 28] be **GRANTED** as to plaintiff's First Amendment claims set forth in ¶¶ 1-3, 5, 12 of plaintiff's Complaint [Docket No. 14], and that these claims be **DISMISSED WITH PREJUDICE**; and

      2.       Plaintiff's Motion for Partial Dismissal of Claims/Suit [Docket No. 42] be **GRANTED,** and that ¶¶ 4, 6-11 and 13-77 of his Complaint [Docket No. 14] be **DISMISSED WITHOUT PREJUDICE**.

## I. BACKGROUND

### A. Partial Dismissal of Plaintiff's Complaint

David Garcia ("Garcia") a Minnesota state prison inmate at Minnesota Correctional Facility - Oak Park Heights ("MCF-OPH"), commenced this action by filing a Complaint seeking relief for numerous violations of his federal constitutional rights. On April 1, 2005, defendants filed their Motion for Summary Judgment on all of Garcia's claims. Subsequently, Garcia filed a Motion for Partial Dismissal of Claims/Suit. In this motion, Garcia asked this Court to dismiss all of his claims,[1] except those that challenge the ban regarding delivery of newspapers and magazines to inmates confined in segregation. Defendants have not opposed Garcia's motion for partial dismissal. Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, this Court recommends dismissal of Garcia's Complaint without prejudice, except for Garcia's First Amendment claims against Thielen, Harrel, Leserman, Youngquist, Ayers and King involving the withholding of newspapers and magazines from inmates confined in segregation.

### B. Factual Background to Garcia's Remaining 42 U.S.C. § 1983 Claims

Garcia is presently incarcerated at MCF-OPH. From February 1, 2003 until February 6, 2004, Garcia served a segregation sentence. See Affidavit of Mark Ehlenz ("Ehlenz Aff."), ¶ 2. Garcia also served a segregation sentence from April 21, 2004,

---

[1] In particular, Garcia sought dismissal of paragraphs 4, 6-11 and 13-77 of his Complaint. Dismissal of these claims also results in the dismissal of defendants Dingle, Reishus, Stoltz, Ehlenz, and Green from the case.

until October 13, 2004. Id. As of the date of defendants' motion, Garcia was no longer in segregation confinement. Id., ¶ 2.

While in segregation confinement, three magazine issues -- the November and December 2003 issues of Maxim, and the December 2003 issue of FHM -- were not delivered to Garcia. See Affidavit of Kari Jo Ferguson ("Ferguson Aff."), ¶ 4; see also Affidavit of Colleen Youngquist ("Youngquist Aff."), ¶ 10. The November 2003 issue of Maxim was not delivered to Garcia because it allegedly contained information that was a risk to the safety and security of the facility and had written or pictorial items suggesting an affiliation with a security threat group. See Youngquist Aff., ¶ 10; see also Ferguson Aff., Ex. E (November 4, 2003 Notice of Non-Delivery). In particular, the November 2003 magazine contained an article entitled "Black Widow's Web" which detailed activities by a security threat group. Id. The December 2003 issue of Maxim was not delivered to Garcia because it contained an article regarding fighting techniques and specifically demonstrated how to assault someone. See Youngquist Aff., ¶ 10; see also Ferguson Aff., Ex. E (November 21, 2003 Notice of Non-Delivery). The December 2003 issue of FHM was not delivered to Garcia because it because it contained an article about picking locks without keys. See Youngquist Aff., ¶ 10; see also Ferguson Aff., Ex. E (November 20, 2003 Notice of Non-Delivery).

According to defendants, all magazines are centrally reviewed allowing all facilities in Minnesota to be consistent in the approval and disapproval of publications. Ferguson Aff., Ex. E (May 2, 2003, December 8, 2003, and December 9, 2003 Youngquist Memoranda). These magazine issues were denied at all Minnesota

Correction Facilities pursuant to policy. Id. Garcia submitted an Offender Kite Form on November 30, 2003, inquiring why it would not be possible to remove an offending article as opposed to denying the entire magazine. Id. (November 30, 2003 Offender Kite Form). The response was that pages from a magazine cannot be removed and any item that has been altered is considered contraband per policy. Id. (December 9, 2003 Youngquist Memorandum). In addition, MCF-OPH receives over 100 magazines a month that are ordered by inmates; in many cases, they are the same magazines. See Youngqust Aff., ¶ 7. According to defendants, there are not enough staff members to deal with the approximately 1,000 pieces of mail received per day and to cut out offending articles from magazines that are sent to inmates. Id.

In addition, inmates serving a segregation sentence are not allowed to receive or to possess newspapers in the segregation unit. See Ehlenz Decl., ¶ 8. Specifically, the Complex 5 Handbook governing segregation at MCF-OPH provides "[n]o newspapers allowed." Id., Ex. A at p. 2. Newspapers are not allowed because contraband can be transported and hid in newspapers in a variety of ways. Id. at ¶ 9. Further, newspapers are not allowed because they increase the risk of fire because newspapers consist of loose, unbound paper. Id. at ¶ 10. However, inmates are allowed to have newspaper clippings mailed to them because clippings do not pose the same safety and security issues as whole newspapers, nor do they require as many staff resources to supervise inmate compliance with this policy. Id. at ¶ 8.

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999).  "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).  "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a

5

genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995). If the evidence is "merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### B. Claims for Damages against Defendants in their Official Capacities

The Eleventh Amendment states that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state." Under the Eleventh Amendment, federal courts do not have subject matter jurisdiction over a claim against a state for damages that has not consented to the suit. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 64-65 (1996); Roberts v. Dillon, 15 F.3d 113, 115 (8th Cir. 1994). This immunity extends to state officials as well since "a suit against a state official in his or her official capacity is a suit against the official but rather is a suit against the official's office [and] is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). When the Eleventh Amendment bars a lawsuit, the case must be dismissed for lack of subject matter jurisdiction. Seminole Tribe, 517 U.S. at 64-65.

In paragraphs 5-20 of his section 1983 Complaint, Garcia included a list of defendants (Thielen, Harrel, Leserman, Youngquist, Ayers and King) and their positions

at MCF-OPH. Garcia did not specify in what capacity he brought suit against these defendants. Absent specification, this Court concludes that they are being sued in their official capacities.[2] See Egerdahl v. Hibbing Comty. Coll., 72 F.3d 615, 620 (8th Cir. 1995) (concluding that a complaint must contain a "clear statement of [the] wish to sue defendants in their personal capacities"); Lopez-Buric v. Notch, 168 F. Supp. 2d 1046, 1049 (D. Minn. 2001) (same).

Garcia has brought suit against defendants Thielen, Harrel, Leserman, Youngquist, Ayers and King in their official capacities for punitive damages, however, the defendants have not consented to such a suit. As such, the Eleventh Amendment bars Garcia's claims against them in their official capacities and this Court lacks jurisdiction over such claims. See Randall v. LeBlanc, No. 05-2504, 2005 WL 2897903 (8th Cir. Nov. 4, 2005) (per curium) (finding that the plaintiff's request for punitive damages fails because the defendant federal prison officials--all of whom were sued in their official capacities--are immune from liability for monetary damages in this case.") (citing Hagemeier v. Block, 806 F.2d 197, 202-03 (8th Cir. 1986). Therefore, defendants' motion for summary judgment should be granted as to Garcia's damage claims against them in their official capacities.

On the other hand, claims for prospective relief can be brought against state employees in their official capacities. See Sherbrooke Turf, Inc. v. Minnesota Dept. of Transp., 345 F.3d 964, 967 n. 1 (8th Cir. 2003) (citing Will v. Mich. Dep't of State Police,

---

[2] If anything, the fact that Garcia included the defendants' positions within MCF-OPH, in the list of defendants of his Complaint, suggests that he was suing defendants in their official capacities.

491 U.S. 58, 66-67 (1989)). Here, Garcia has also asked for declaratory and injunctive relief that is not be barred by Eleventh Amendment immunity.[3] Therefore, the Court will address the merits of Garcia's claims.

### C. Garcia's First Amendment Claims

Based on the remaining claims and facts of this case, the only two issues that remain before this Court are whether defendants Thielen, Harrel, Leserman, Youngquist, Ayers and King violated Garcia's First Amendment rights by (1) precluding Garcia, while in segregation, from receiving three magazines containing articles deemed to be a threat to prison security; and (2) by outright denying newspapers to him as a segregation inmate.

The Supreme Court has found that an "inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). "Prison regulations which restrict an inmate's access to publications are valid under the Constitution if 'reasonably related to legitimate penological interests.'" Cooper v. Schriro, 189 F.3d 781, 784 (8th Cir. 1999) (quoting Dawson v. Scurr, 986 F.2d 257, 259-60, 263 (8th Cir.) cert. denied, 510 U.S. 884 (1993)); see also Turner v. Safley, 482 U.S. 78, 89 (1987). Legitimate penological interests include security, order, and

---

[3] This Court notes that Garcia is no longer in segregation and that the equitable remedies of declaratory and injunctive relief are only available if there is a real or immediate threat that an inmate will be harmed again. See Martin v. Sargent, 780 F.2d 1334, 1336 (8th Cir. 1985) (citation omitted). However, as defendants have not raised this argument, the Court will proceed with the substance of their motion.

rehabilitation. See Procunier v. Martinez, 416 U.S. 396, 413 (1974) rev'd on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).

In determining whether a policy or regulation is reasonable, the Court considers four factors: (1) whether the regulation or policy is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising the right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives with which the prison could continue to serve its interest without impinging on constitutional rights. See Turner, 482 U.S. at 89-90. Given this standard, the Court will examine whether the actions taken by defendants in restricting certain magazines and newspapers from Garcia while in segregation violated his First Amendment rights.

### 1. Magazines

As stated previously, Garcia was denied magazines on three separate occasions while in segregation confinement. See Ferguson Aff., ¶ 4. The magazines were not delivered because they contained information that was deemed to be a risk to the safety and security of the facility. The November 2003 issue of Maxim contained information on security threat groups; the December 2003 issue of Maxim contained fighting techniques, and specifically demonstrated how to assault someone; and the December 2003 issue of FHM contained an article about picking locks without keys. See Youngquist Aff., ¶ 10; see also Ferguson Aff., Ex. E.

Garcia has not presented any evidence or argument on his First Amendment claim as it relates to magazines. Thus, having failed to present evidence or argument

on this claim, this Court could conclude that its is abandoned. See e.g., Thomsen v. Ross, 368 F. Supp.2d 961, 974 n. 9 (D. Minn. 2005) (finding that a plaintiff had abandoned claims in his complaint that were not addressed in his summary judgment submissions).  However, as the record submitted by defendants contains Garcia's suggestion that cutting out an offending article was an appropriate alternative to banning an entire magazine (see Ferguson Aff, Ex.  E (November 30, 2003 Offender Kite Form), the Court will address the merits of the magazine ban.

Minnesota Department of Corrections Policy 302.020, the applicable policy dealing with mail coming into a prison, provides:

> F.   Unallowable Mail:  Incoming and outgoing mail, in whole or in part, is not authorized if it
>
> 1.   constitutes a risk to the safety and security of the facility, specific individuals or the general public;
>
> * * *
>
> 4.   teaches, advocates, describes or contains plans for activities in violation of facility rules, escape, or other criminal activity;
>
> 5.   contains any written or pictorial item suggesting an affiliation with security threat groups, including, but not limited to, personal letters, magazines, newspapers, books, or organizational literature;
>
> * * *
>
> 9.   contains information, which if communicated, would create a threat of violence, physical harm, or breach of facility security; . . .

See Youngquist Aff., Ex. A at p. 4.

Although prison officials have the burden of proving that censorship is necessary, they are not "'required to show with certainty that adverse consequences would flow from the failure to censor a particular [publication]. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty.'" Travis v. Norris, 805 F.2d 806, 808 (8th Cir. 1986) (quoting Martinez, 416 U.S. at 414).

Here, the defendants' censorship of the magazines at issue was rationally related to the legitimate interest of maintaining security within the prison. The November 2003 issue of Maxim containing an article titled "Black Widow's Web," dealt with a prison gang. See Justin, Berton, *Black Widow's Web*, MAXIM, Nov. 2003, http://www.maximonline.com/articles/index.aspx?a_id=5507 (last visited December 8, 2005). This Court finds that censoring an article dealing with a how a gang was run out of a prison is rationally related to insuring security and order within the prison. In addition, this Court finds that prohibiting articles that teach fighting techniques and how to pick locks is also rationally related to ensuring security and order within prison.

Further, based on the undisputed facts presented, this Court finds that the remaining factors in Turner establish that defendants did not violate Garcia's First Amendment rights. In response to Garcia's inquiry into why it would not be possible to remove an offending article as opposed to denying the entire magazine, defendants established that there are not enough staff members to deal with the approximately 1,000 pieces of mail per day coming into the prison and cut out offending articles from the 100-plus magazines that are sent to inmates, and that inmates can receive copies of

magazine articles through the mail. See Ferguson Aff., Ex. E (November 30, 2003 Offender Kite Form); Youngqust Aff., ¶¶ 7, 9, Ex. A at p. 3 (MDC Policy 302.020 § (E)(2)(c)(6)).

In sum, given the danger of the articles contained in the banned magazines, the burden to prison staff to have to selectively cut out articles from offending magazines, coupled with the alternative available to inmates of having copies of non-offending articles sent to them, this Court finds that defendants did not violate Garcia's First Amendment rights when it refused to deliver to him the November and December 2003 issues of Maxim, and the December 2003 issue of FHM.

2. Newspapers

The Complex 5 Handbook governing segregation at MCF-OPH provides "[n]o newspapers allowed." See Ehlenz Decl., ¶ 8, Ex. A at p. 2. Garcia claimed to have had been precluded from receiving newspapers while in segregation that he had purchased. See Ferguson Aff., Ex. B (Plaintiff's Responses to Defendants' Request for Production of Documents and Interrogatories) at p. 5. Defendants argued that newspapers are not allowed in segregation because they are large and bulky and consist of loose pages, allowing contraband to be transported and hid in them in a variety of ways. See Ehlenz Decl., ¶ 9; see also Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") at p. 15. Further, newspapers are not allowed because they increase the risk of fire since newspapers consist of loose, unbound paper. Id. at ¶ 10; see also Defs.' Mem. at p. 15. Defendants acknowledged that while smoking is not allowed in the prison, a fire hazard still exists due to electrical appliances and outlets.

Id. at ¶ 10. Defendants also explained that an inmate is allowed to have newspaper clippings mailed to him because clippings do not pose the same safety and security issues as whole newspapers, nor do they require as many staff resources to supervise inmate compliance with segregation unit newspaper policy. Id. at ¶ 8. This according to defendants, provides a suitable alternative for inmates to exercise their First Amendment rights. See Defs.' Mem. at p. 18.

Garcia has not presented any evidence or argument on his First Amendment claim as it relates to newspapers, nor could this Court glean any evidence or argument supporting his claim from defendants' submissions. Thus, having failed to present evidence or argument on these claims, this Court concludes that they are abandoned and will not address them. See e.g., Thomsen v. Ross, 368 F. Supp.2d at 974 n. 9.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1. Defendants' Motion Summary Judgment [Docket No. 28] be **GRANTED** as to plaintiff's First Amendment claims set forth in ¶¶ 1-3, 5, 12 of plaintiff's Complaint [Docket No. 14], and that these claims be **DISMISSED WITH PREJUDICE**; and

2. Plaintiff's Motion for Partial Dismissal of Claims/Suit [Docket No. 42] be **GRANTED,** and that ¶¶ 4, 6-11 and 13-77 of his Complaint [Docket No. 14] be **DISMISSED WITHOUT PREJUDICE**.

Dated:      December 28, 2005

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **January 16, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.